IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| ACG Credit Company II, LLC, | ) Case No. 14-11500 (KJC) |
| Debtor. | ) Hearing Date: July 14, 2014 at 1:00 p.m. |
| | ) Related to Docket Nos. 11, 12, 44 and 45 |

### SAGECREST II, LLC'S REPLY IN FURTHER SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO PROCEED WITH TRIAL BEFORE THE U.S. DISTRICT COURT IN CONNECTICUT[1]

SageCrest, by and through its undersigned counsel, submits this reply in further support of its Motion for Relief from the Automatic Stay to Proceed with Trial Before the U.S. District Court in Connecticut (the "Stay Motion").[2] The Debtor's objection to the Stay Motion makes clear that a trial in the Connecticut District Court would resolve all claims between SageCrest and the Debtor and, therefore, the Stay Motion should be granted. The Debtor and its creditors would suffer no prejudice if the trial in the Connecticut Action proceeds, while SageCrest would be prejudiced and judicial economy would suffer if automatic stay continues to apply to the Connecticut Action.

In its objection, the Debtor does not dispute the facts that give rise to the Stay Motion. Rather, the Debtor claims that it would suffer prejudice if the Connecticut Action proceeds to trial because it has yet to propose a plan of reorganization. This argument ignores the limited relief requested by the Stay Motion. SageCrest simply seeks relief from the automatic stay to adjudicate the claims between SageCrest, the Debtor, and the other Defendants, many of which have been

---

[1] SageCrest is filing this reply in order to inform the Court of, and address, relevant facts and legal issues that were raised by the Debtor's objection that was filed on Wednesday afternoon, July 9, 2014.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Stay Motion.

pending since 2009. That trial will adjudicate and thereby liquidate the SageCrest claims against the Debtor and the other Defendants, the Defendants' counterclaims, and SageCrest's objection to a proof of claim filed by the Debtor and other Defendants in SageCrest's bankruptcy. The trial will have no impact on the Debtor's ability to propose a plan of reorganization or other proceedings in this case. In fact, as discussed in the Stay Motion, any purported reorganization by the Debtor requires a resolution of the claims between SageCrest and the Debtor because SageCrest is the Debtor's largest non-insider creditor. In the event of a resolution in favor of SageCrest against the Debtor in the Connecticut District Court, SageCrest would need to come back to this Court before SageCrest could pursue any remedies against the Debtor on any judgment.[3] (*See* Stay Motion at ¶¶ 36-38.)

The Debtor argues that SageCrest will not be prejudiced by the delay in the proceedings before the Connecticut District Court because a resolution of the claims in this bankruptcy proceeding may save time and money. The Connecticut District Court and the parties were mere hours away from beginning the trial in the Connecticut Action when this proceeding was commenced, making the Connecticut District Court best positioned to promptly and efficiently litigate the claims between SageCrest and the Debtor. The Connecticut District Court is ready and willing to proceed with the trial. (Friedman Affidavit Ex. A at 9-10.) In its objection, the Debtor fails to address the clear authority that where the parties are on the brink of trial, the hardship of a lengthy delay is presumed. (*See* Stay Motion at ¶¶ 39-43.)

Moreover, the Debtor has already consented to have any claims related to the So-Ordered Settlement Stipulation heard by the Connecticut District Court. In proceedings before the

---

[3]  SageCrest continues to reserve the right to challenge whether the Debtor's bankruptcy case should be dismissed as being filed in bad faith and because no reorganization is possible, among other grounds. (*See* Stay Motion at fn. 8.)

Connecticut Bankruptcy Court in SageCrest's bankruptcy, the Debtor and other non-Debtor Defendants filed a December 22, 2008, Proof of Claim (the "Proof of Claim"). (July 11, 2014, Affidavit of Mark E. McGrath (the "McGrath Affidavit"), Exhibit J.) The Proof of Claim included all of the Debtor's claims based upon the So-Ordered Settlement Stipulation. (*Id.*) At a conference before the Connecticut Bankruptcy Court on June 15, 2010, counsel for the Defendants argued that the issues raised by the Proof of Claim should be consolidated with the claims in the Connecticut Action because Defendants' counterclaims are the same as the claims asserted in the Proof of Claim. (McGrath Affidavit, Exhibit K at pp. 67-68.) The Connecticut Bankruptcy Court adopted that suggestion in a July 15, 2014 Order that consolidated SageCrest's objection to the Proof of Claim with the other claims in the Connecticut Action. (McGrath Affidavit, Exhibit L.) On July 1, 2013, those consolidated claims were ultimately moved to the Connecticut District Court upon the withdrawal of the reference, sought by the Debtor and the non-Debtor Defendants, from the Connecticut Bankruptcy Court. (McGrath Affidavit, Exhibit M.) Accordingly, Judge Underhill is now presiding over the litigation between SageCrest and the Debtor in his capacity of an Article 3 judge overseeing the resolution of the Debtor's proof of claim in SageCrest's bankruptcy. Furthermore, lifting the stay will aid in the administration and completion of SageCrest's confirmed chapter 11 case. The Debtor cannot now argue that it would be more appropriate from a Constitutional perspective or efficient to consolidate all claims related to the So-Ordered Settlement Stipulation in this Court, when those very claims were previously consolidated before an Article 3 judge in Connecticut at the Debtor's request.

Finally, the Debtor suggests that judicial economy would not be served by allowing the Connecticut District Court to complete the trial that it was hours away from commencing. To do so, the Debtor claims that it may file an adversary proceeding against SageCrest in this Court for turnover pursuant to section 542 of the Bankruptcy Code with issues that may overlap with the

issues raised in the Connecticut Action. Such a hypothetical proceeding would not be properly filed in this Court for several reasons.

The Debtor does not and never did have any interest in the Assigned Loans that the Debtor argues are the subject of a potential turnover claim. That property was owned by and transferred directly to SageCrest by the Debtor's non-Debtor affiliates, ACG Finance and Fine Art Finance. (Friedman Affidavit, Exhibit B at § 4; McGrath Affidavit, Exhibits P-T; Debtor's Objection, Exhibit A at Exhibit L.) To the extent SageCrest ever became fully satisfied on its payment rights under the So-Ordered Stipulation, which it has not, SageCrest is obligated under the So-Ordered Stipulation to pay any excess proceeds to the particular non-Debtor assignor from whom the asset giving rise to such proceeds was obtained—NOT the Debtor. (Friedman Affidavit, Exhibit B at § 7(c) (providing that the "excess proceeds shall be turned over to ACG-II or ACG Art Finance (whichever is the applicable party)" and that "any additional money in the Blocked Account ... shall be immediately remitted by SageCerst to ACG-II and/or ACG Art Finance (which ever is the appropriate entity)").) If there were any Assigned Loans still outstanding at the time SageCrest were to become fully satisfied, the So-Ordered Stipulation also contemplated that SageCrest could transfer title to the loans back to the respective non-Debtor assignor. Such obligation demonstrates that the non-Debtor assignors had previously relinquished title. The evidence demonstrates that the Debtor had no interest in the Assigned Loans or the Assigned Collateral.

This is further supported by the Debtor's responses to interrogatories and document requests served in the Connecticut Action that asked the Debtor to identify all of its assets. (McGrath Affidavit, Exhibits N-O.) In those responses, the Debtor did not list any of the Assigned Loans as an asset or produce any documents relating to the Assigned Loans. (*Id.*) In 2013, the Debtor's counsel in Connecticut represented that the Debtor had no other assets other than what was set forth in those discovery responses. (McGrath Affidavit, Exhibit U.) Thus, the Debtor's arguments in

this proceeding are directly contrary to its sworn interrogatory responses and the representations of counsel.

But even assuming *arguendo* the Debtor had owned and did assign the Assigned Loans to SageCrest under the So-Ordered Settlement Stipulation, that property right was terminated approximately six years ago. Transfer of title to the Assigned Loans from the assignors to SageCrest became absolute at the time ACG Finance and Fine Art Finance executed the Allonges and the General Loan Document Assignment and the security interests in the collateral for those loans were assigned to SageCrest on May 19, 2008. (McGrath Affidavit, Exhibits P-Q, R, T.) In fact, the Honorable Martin Glenn held that the assignment to SageCrest was absolute and that decision was affirmed on appeal by the United States District Court for the Southern District of New York in an action whereby the non-Debtor assignors sought to enforce rights on one of the Assigned Loans in the underlying borrower's bankruptcy case. (McGrath Affidavit, Exhibit R at pp. 12-13 ("According to the face of the Settlement Stipulation and the relevant assignment documents, the Claimants assigned all of their claims against [Barquet Group, Inc. and Ramis Barquet] to SageCrest, and ACG Finance assigned its lien to SageCrest."); McGrath Affidavit, Exhibit S at p. 1 ("The Claimants do not have any claim or lien against [Barquet Group] because any interests they may have had in the note were fully assigned to SageCrest as of the [Barquet Group's] Petition Date."); McGrath Affidavit, Exhibit T at p. 2 ("[P]ursuant to the Settlement Stipulation, [ACG-I, ACG Finance, and Fine Art Finance] assigned all of [the Barquet Group's] Loan obligations under the Note to SageCrest."); McGrath Affidavit, Exhibit T at p. 7 ("Judge Glenn correctly found that Claimants did not have a meritorious defense to the Claim Objection in light of the undisputed fact that, pursuant to the Settlement Stipulation, they had assigned all of their claims against Barquet Group and ACG Finance's lien to SageCrest.") The Debtor is bound by those decisions under principles of collateral esstoppel because the non-Debtor assignors and the

Debtor are controlled by one single person, Ian Peck. *See Montana v. United States*, 440 U.S. 147, 160 (U.S. 1979). The fact that the Debtor never even asserted a claim, interest or right to other property in the Barquet bankruptcy case is further evidence that the Debtor never thought it had an interest in the Assigned Loans.

Even assuming that the Debtor had an interest in the Assigned Loans (which, as demonstrated above, the Debtor did not), pursuant to 28 U.S.C. § 1334(c), this Court should (and may be required to abstain) from exercising jurisdiction over any turnover action the Debtor may assert against SageCrest. Abstention is appropriate, particularly where, among other things, state law issues predominate over bankruptcy issues (here, they are all state law claims), there is a related proceeding commenced in another court with appropriate jurisdiction (here, an Article 3 judge and the Debtor filed a proof of claim), the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties (here, it is evident that that is exactly what the Debtor is attempting to do), and the presence of "non-debtor parties" (here, there are multiple non-Debtor Defendant parties). *See, e.g., In re DHP Holdings II Corp.*, 435 B.R. 220, 223-224 (Bankr. D. Del. 2010). Each of these factors is present here, and, in the event the Debtor files a claim for turnover, this Court should decline jurisdiction over the claim.[4]

---

[4] *See In re DHP Holdings II Corp.*, 435 B.R. 220, 225-26 (Bankr. D. Del. 2010) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute.") (citing *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C.Cir.1991); *Am. Home Mortgage Inv. Corp. v. Lehman Bros. Inc. (In re Am. Home Mortgage, Holdings, Inc.)*, 388 B.R. 69, 94 (Bankr. D.Del. 2008) (holding that title to the debt was in dispute and an action for turnover was premature); *Miller v. Greenwich Capital Fin. Prods., Inc. (In re Am. Bus. Fin. Servs., Inc.)*, 361 B.R. 747, 761 (Bankr. D. Del. 2007) (dismissing the turnover count because the trustee's right to collect hinged upon obtaining a judgment in its favor); *Hechinger Inv. Co. of Del. v. Allfirst Bank (In re Hechinger Inv. Co. of Del.)*, 282 B.R. 149, 162 (Bankr. D. Del. 2002) (holding that turnover was not available where the Debtor's claim to funds was disputed and unliquidated).

## CONCLUSION

For the foregoing reasons and those set forth in the Stay Motion, SageCrest respectfully requests that the automatic stay be lifted so that the trial may proceed in the Connecticut Action and the Connecticut District Court may issue any rulings or decisions necessary to issue final judgment on the claims between SageCrest and the Debtor, and that the Court grant such other and further relief as is just and proper.

Dated: July 11, 2014

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: /s/ J. Kate Stickles
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: 302-652-3131
Facsimile: 302-652-3117

Laurence May
900 Third Avenue – 16th Floor
New York, NY 10022
Telephone: 212-752-8000
Facsimile: 212-752-8393

- and –

SHEPPARD, MULLIN,
RICHTER & HAMPTON LLP
Craig A. Wolfe
Robert S. Friedman
Mark E. McGrath
30 Rockefeller Plaza
New York, NY 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

Counsel for SageCrest