## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ACG CREDIT COMPANY II, LLC,[1] | ) Case No. 14-11500 (KJC) |
| | ) |
| Debtor. | ) Hearing Date: TBD |
| | ) Obj. Deadline: TBD |

### APPLICATION OF THE DEBTOR FOR AN ORDER
### AUTHORIZING AND APPROVING THE EMPLOYMENT OF
### EXECUTIVE SOUNDING BOARD ASSOCIATES LLC
### AS CHIEF RESTRUCTURING OFFICER FOR
### THE DEBTOR *NUNC PRO TUNC* TO JUNE 25, 2014

ACG Credit Company II, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), hereby submits this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtor to employ Executive Sounding Board Associates LLC ("ESBA") as its Chief Restructuring Officer ("CRO"), effective *nunc pro tunc* to June 25, 2014. In support of this Application, the Debtor respectfully represents as follows:

### Jurisdiction

1.    This Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334.

2.    This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (11 U.S.C. §§ 101–1532, as amended, the "Bankruptcy Code").

---

[1] The last four digits of the Debtor's federal tax identification number are 7139.

**Background**

5.      On June 17, 2014 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its properties as a debtor in possession as authorized by sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in this chapter 11 case.

6.      The Debtor is engaged principally in the business of loaning money to individuals or organizations to purchase museum quality art.  The Debtor retains collateral in the form of the art.

7.      By way of background, on or about May 19, 2008, ACG Credit Company, LLC, ACG Credit Company II, LLC ("ACG II"), Art Capital Group, LLC, ACG Finance Company, LLC, and Ian Peck entered into the So-Ordered Settlement Stipulation (the "Settlement Stipulation") with SageCrest II, LLC ("SageCrest"), Windmill Management, LLC, and Alan Milton ("Milton"), to resolve litigation entitled *SageCrest II, LLC v. ACG Credit Company LLC, et al.*, Index No. 600195/08 (the "First State Court Action"). SageCrest had agreed to settle the First State Court Action within weeks of the ACG Credit Company, LLC, ACG Credit Company II, LLC, Art Capital Group, LLC, ACG Finance Company, LLC, and Peck filing counterclaims for fraud and other tortious conduct against SageCrest.

8.      The Settlement Stipulation imposed respective obligations and restrictions on the parties.  It required ACG II to pay SageCrest $29,925,500.00, which included an initial payment of $21,000,000.00 (the "Initial Consideration"), a six-month note in the amount of

2

$4,500,000.00, and a two-year interest-free note in the amount of $4,425,000.00 (the "Two Year Note"). The Initial Consideration under the Settlement Stipulation consisted of a $14,300,000.00 cash payment to be made at the time of closing and an assignment of certain rights with respect to loans and collateral (the "Assignment"). ACG II made the $14,300,000 cash payment, and ACG Finance Company, LLC and Fine Art Finance, LLC executed the requisite collateral assignment in favor of SageCrest at the time of closing. In May 2008, ACG II paid the $4,500,000 note in full.

9.      In the District Court of Connecticut consolidated actions, *SageCrest II, LLC v. ACG Credit Company II, LLC et al,* 3:13-cv-973 (SRU) and *SageCrest II, LLC v. Ian S. Peck, et al,* 3:13-cv-974 (SRU) (the "Connecticut Actions"), SageCrest has, *inter alia,* alleged that Defendants failed to pay $6,700,000 related to the Assignment on or before November 19, 2008 and the $4,425,000 Two Year Note. Notably, SageCrest has already recovered at least $6,472,622.56 related to the Assignment and $714,845.82 towards the Two Year Note. SageCrest is also still collecting on the loans that were the subject of the Assignment, and SageCrest potentially could recover millions of dollars more on those loans, which would satisfy any remaining obligations of ACG II to SageCrest. In the Connecticut Actions, SageCrest ignores its own wrongdoing and breaches of the Settlement Stipulation. The Settlement Stipulation imposed obligations and express restrictions on SageCrest. However, SageCrest, in concert with its principal Milton, from the outset and *before any alleged breach by Defendants,* blatantly disregarded those obligations and restrictions. The Settlement Stipulation proscribed SageCrest from transferring its interest in the Assigned Loans and the Two Year Note to SageCrest's offshore affiliates – however, SageCrest transferred *over 75%* of its interest in the Assigned Loans and the Two Year Note to such offshore affiliates. In addition, the Settlement

Stipulation prohibited SageCrest from asserting certain claims against Defendants – however, since the effective date of the Settlement Stipulation, SageCrest has *twice* filed such prohibited claims. SageCrest also has utterly failed to secure, obtain or dispose of the collateral for the Assigned Loans as required by the Uniform Commercial Code ("U.C.C.") and failed to provide the requisite statutory notice of SageCrest's sales of the Assigned Loan collateral. Further, SageCrest has repeatedly and wrongfully interfered with Fine Art Finance's efforts to obtain its rightful fees and commissions, known as Arranger's Fees, due to it under the Settlement Stipulation.

10.    The Debtor has concluded that it is in the best interests of the Debtor's estate to retain a CRO in order to efficiently and effectively work through its bankruptcy case. Due to the contentious history between Ian Peck, the sole principal of the Debtor and SageCrest II, LLC ("SageCrest"), the Debtor believes that having a CRO in place will ensure effective and efficient negotiations and resolutions with SageCrest and potentially other creditors of the Debtor, and allow the Debtor to successfully restructure its debt and maximize recovery for all creditors.

11.    Accordingly, effective as of June 25, 2014, and subject to the Court's approval, the Debtor and ESBA entered into an engagement letter (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit B**, pursuant to which ESBA will serve as the Debtor's CRO.

## Relief Requested

12.    By this Application, the Debtor requests the entry of an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code authorizing the employment of ESBA as the Debtor's CRO in its chapter 11 case *nunc pro tunc* to June 25, 2014.

### A.  Qualifications

13.     ESBA is an experienced financial professional firm with over 35 years of corporate finance experience in corporate restructuring. ESBA has worked with companies, management teams, boards of directors and creditor constituencies to realize value through improvement in operations and balance sheet initiatives in all of his assignments. ESBA has acted as CRO for numerous clients. In such a capacity ESBA has acted as the intermediary between the Board of Directors and management, creditors and equity groups and in many cases facilitated successful reorganizations. ESBA manages day-to-day activities, assesses the needs of clients and manages companies through the bankruptcy process. ESBA has seasoned executives who have extensive experience as CRO who specialize in the bankruptcy process.

14.     ESBA has represented companies as the CRO with the overriding objective to maximize value to our clients and reduce the time you spend on matters such as these take from the ultimate goal of your ongoing entities to generate additional profits and cash flow.

### B.  Services to Be Provided

15.     Subject to entry of the Proposed Order and consistent with the terms of the Engagement Letter, ESBA will serve as the CRO of the Debtor.  Subject to entry of the Proposed Order and consistent with the terms of the Engagement Letter, the duties of ESBA will include the following:

- Assume overall management and control of day-to-day operations, including cash management, of the Company.

- Gain an understanding of the legal and operational structure of the Company, it affiliates and related entities, if any.

- Manage the Chapter 11 bankruptcy process and fulfill all of the reporting requirements associated with operating in Chapter 11.

- Provide leadership and direction of the reorganization process including, without limitation, negotiations with relevant parties-in-interest in the development and implementation of an appropriate restructuring plan for the Company.

- Negotiate litigation matters as Chief Restructuring Officer on behalf of the Company.

- Negotiate on behalf of the Company with various parties, including but not limited to secured lenders, creditors, equity holders, governmental units, and any other parties-in-interest.

- Plan and provide overall management of any required wind down efforts, including liquidation of residual assets.

- Other services as deemed appropriate.

## C. Professional Compensation

16. The principal terms of ESBA's engagement are as follows:

   a. ESBA will be paid its standard hourly rates for the services its personnel provide to the Company. ESBA agrees that it fees will not exceed $60,000 on a monthly basis.

   b. ESBA will be reimbursed for any out-of-pocket expenses reasonably incurred in connection with the services rendered hereunder. Such expenses include, but are not limited to, travel, meals, lodging, parking, telephone and fax, general office services, photocopying and delivery services. Travel time is charged at fifty percent (50%) of the consultant's standard hourly rate. The reasonable fees and expenses of attorneys consulted or engaged by ESBA to assist it in connection with this Agreement shall be a reimbursable expense incurred by ESBA.

   c. ESBA shall receive a retainer of $20,000.00 due and payable at signing of this Engagement Agreement. The retainer will be returned at the conclusion of the engagement, less any outstanding invoices due at that time, without interest.

17. ESBA will file with the Court a monthly statement of compensation

received from the Debtor, but will not apply to the Court for approval of amounts paid. ESBA

will be paid monthly by the Debtor for its services and expenses on the terms set forth in the

Engagement Letter. The Debtor will not seek authority to engage ESBA as a professional under section 327 of the Bankruptcy Code in its chapter 11 cases.

18.    The Debtor believes that this compensation is fair and reasonable in light of industry practice and market rates, ESBA experience in comparable chapter 11 cases and the scope of work to be performed.

19.    As set forth in the Declaration of Michael DuFrayne (the "DuFrayne Declaration"), attached hereto as **Exhibit C**, the Debtor does not owe ESBA any amount for services performed or expenses incurred prior to the commencement of the Debtor's chapter 11 case, and, thus, ESBA is not a prepetition creditor of the Debtor.

## D. Indemnification

20.    In addition to any insurance policies carried by the Debtor that would cover ESBA, the Engagement Letter further provides that the Debtor will indemnify and hold harmless ESBA from and against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements, directly or indirectly caused by, relating to, based upon, arising out of or in connection with this engagement of ESBA as CRO by the Debtor or the performance by ESBA of any services rendered pursuant to such engagement, unless there is a final non-appealable order of a Court of competent jurisdiction, at the trial level, finding ESBA directly liable for gross negligence or willful misconduct (the "Indemnification Provisions"), which provisions are defined in the Engagement Letter.

21.    The terms of the Indemnification Provisions were fully negotiated between the Debtor and ESBA at arm's length and the Debtor respectfully submits that the Indemnification Provisions are reasonable and appropriate. Accordingly, as part of this Application, the Debtor requests that this Court approve the Indemnification Provisions.

### E.  Disinterestedness

22.    To the best of the Debtor's knowledge, information and belief, ESBA does not have any connection with or any interest adverse to the Debtor, its significant creditors, or any other significant party in interest known to ESBA, or its respective attorneys and accountants, except as may be set forth in the DuFrayne Declaration. Although the Debtor submits that the retention of ESBA is not governed by section 327 of the Bankruptcy Code, the Debtor attaches the DuFrayne Declaration, which discloses, among other things, any relationship that ESBA has with the Debtor, its significant creditors, or other significant parties in interest known to ESBA. The Debtor submits that ESBA is otherwise a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

## Basis for Relief

23.    The Debtor requests authority to retain ESBA under the terms of the Engagement Letter pursuant to section 363 of the Bankruptcy Code, which provides in pertinent part that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b). Courts interpreting section 363(b) have held that transactions should be approved pursuant to such provision where, as here, they are supported by management's sound business judgment. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.2d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit had adopted the "sound business purpose" test for section 363(b)).

24.    The retention of corporate officers is proper under section 363 of the Bankruptcy

Code. Courts recognize the applicability of section 363(b) of the Bankruptcy Code to the use of estate property to compensate individuals employed outside the ordinary course of business. *See In re First Int'l Services Corp.*, 25 B.R. 66, 69 (Bankr. D. Conn. 1982). Indeed, courts have relied upon section 363(b) as the basis upon which to employ and compensate professionals to serve as officers or other management-level personnel employed by the debtor. *See, e.g., In re Spansion Inc.*, Case No. 0-10690 (KJC) (Bankr. D. Del. Apr. 13, 2009); *In re Verasun Energy Corp.*, Case No. 08-12687 (PJW) (Bankr. D. Del. Dec. 17, 2008); *In re WorldSpace, Inc.*, Case No. 08-12412 (KJC) (Bankr. D. Del. Nov. 10. 2008); *In re Hines Horticulture, Inc.*, Case No. 08-11922 (KJC) (Bankr. D. Del. October 2, 2008).

25.     The Debtor has determined, in the exercise of its business judgment, that the fee structure set forth in the Engagement Letter appropriately reflects the nature of the services to be provided by ESBA, contains reasonable terms and conditions of employment, and should be approved under section 363 of the Bankruptcy Code. Additionally, the Debtor submits that the employment of ESBA as CRO is consistent with the "Jay Alix Protocol" established by the U.S. Trustee.

### Notice

26.     Notice of this Application has been given to: (a) the Office of the United States Trustee for the District of Delaware and (b) the top 20 creditors, and (c) all other parties requesting notice pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested herein, the Debtor respectfully submits that further notice of this Motion is neither required nor necessary.

WHEREFORE, the Debtor respectfully requests for the reasons set forth herein that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, authorizing and

approving the employment by the Debtor of ESBA as the Debtor's CRO, effective as of June 25, 2014, and granting such other and further relief as this Court deems just and proper.

Dated: July 14, 2014

ACG Credit Company II, LLC, Debtor and Debtor- in-Possession

/s/ Ian Peck
Ian Peck