**EXHIBIT B**

**EXHIBIT B**

# Executive Sounding Board Associates LLC

Management and Financial Consultants

2 Penn Center Plaza • 1500 John F. Kennedy Boulevard • Suite 1730 • Philadelphia, PA 19102 • 215-568-5788 • FAX 215-568-5769

June 25, 2014

Mr. Ian Peck
Director
ACG Credit Company II, LLC., DIP
850 Third Avenue
New York, NY 10022

Re: *Interim Management Services ("Agreement")*

ESBA is pleased to set forth the terms of the engagement of Executive Sounding Board Associates LLC (ESBA) to provide consulting and interim management services as outlined herein to ACG Credit Company II, LLC, DIP (("ACG" or the "Company"), case no.14-11500-KJC (USBC - DOD).

1. **Services.** The Company hereby engages ESBA to provide the interim management services described on Exhibit A to this Agreement. Michael DuFrayne, a Managing Director of ESBA, will be in charge of the assignment. Michael DuFrayne, as representative of ESBA, will have the title of Chief Restructuring Officer ("CRO") of the Company but will not be an employee of the Company. Other ESBA LLC professionals will work as needed, as we consider it appropriate and most cost effective to utilize other consultants, some of whom may be independent contractors, on the engagement.

2. *Independent Contractor; Limitation of Authority; No Fiduciary Relationship.* ESBA is an independent contractor, and no employee or agent of ESBA is an employee of the Company. As an independent contractor, ESBA will have complete and exclusive charge of the management and operation of the Company's business. ESBA employees will not be considered employees of the Company. Nothing in this Agreement is intended to create, shall be construed as creating or be deemed to create a fiduciary relationship between ESBA and the Company. ESBA shall have no authority to legally bind the Company in any matter whatsoever, except as specifically set forth herein. ESBA may, in the performance of its engagement, negotiate on behalf of the Company with various parties, including but not limited to creditors, equity holders and employees of the Company, potential purchasers of the Company or its assets and governmental entities, but, unless expressly authorized in writing by the Company, ESBA shall not have any authority or be under any duty whatsoever to execute documents in the name of or on behalf of the Company with respect to such negotiations or the transactions contemplated therein or otherwise.

3. *No Assumption of Liability:* Notwithstanding any provision herein to the contrary, ESBA does not assume, and shall not be deemed to have assumed, any liabilities, debts or obligations of the Company of any kind or description.

4. *Information; Access.* The Company shall provide ESBA access to all information and personnel necessary for ESBA to perform its engagement under this Agreement, including, to the extent relevant, all of the Company's books, records, financial plans and operating policies and procedures. The Company represents and warrants that, except as disclosed to ESBA in writing, all information made available to ESBA will, to the best of the Company's knowledge, at all times under this Agreement be complete and correct in all material

# Executive Sounding Board Associates LLC

Management and Financial Consultants

respects and will not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements therein not misleading in the light of the circumstances under which such statements are made. Company further represents and warrants that any projections or other information provided by it to ESBA will have been prepared in good faith and will be based on assumptions which, in light of the circumstances under which they are made, are reasonable, although it is recognized that projections are based on assumptions that may or may not prove to be accurate. Company acknowledges that, in rendering its services hereunder, ESBA will be using and relying on the information (and information available from public sources and other sources deemed reliable by ESBA) without independent verification thereof by ESBA or independent appraisal by ESBA of any of the Company's assets. ESBA does not assume responsibility for the accuracy or completeness of the information or any other information regarding the Company. ESBA acknowledges that, subsequent to the date hereof, it will be responsible for approving the numerous reports and projections required of the Company and that it will rely on data and information from the Company only if it has a good faith belief as to the accuracy of such information and data.

5. *Oversight of Engagement.* ESBA, and any employee of ESBA providing services under this Agreement, shall report only to, and its engagement shall be subject to the exclusive supervision of, the Company's Board of Directors (the "Board"). Except for such oversight, the actions and decisions of ESBA shall not be subject to review by any other person. ESBA shall work collaboratively with the Board, the Company's management, and the Company's other professionals in performing its engagement under this Agreement.

6. *Compensation and Expenses.*

ESBA will be paid its standard hourly rates for the services its personnel provide to the Company. Mr. DuFrayne's standard billing rate is $550 per hour; however, for this engagement his rate will be discounted to $495 per hour. In addition, Robert Agarwal, a ESBA Director, will assist on the engagement. Mr. Agarwal's standard billing rate is $425 per hour; however, for this engagement his rate will be $400 per hour. Other ESBA personnel, if any, used during the course of this engagement will be charged at their standard billing rate. ESBA agrees that it fees will not exceed $60,000 on a monthly basis.

6.1 ESBA understands that it will be retained under 11 U.S.C. § 363. ESBA billings will be rendered monthly for the fees and out-of-pocket expenses. The Company is to provide for the monthly payment of ESBA's services. The Company acknowledges that ESBA's invoices are due and payable upon presentation. If an invoice is not paid upon presentation, we reserve the right to cease work until the outstanding invoice is paid and retired.

Should it be deemed necessary in the course of the engagement for ESBA to provide temporary staff as covered in Section 1 ESBA shall be entitled to payment from the Company based on the standard hourly rate of the individual consultant or staff member. ESBA LLC's standard hourly rates are:

| | |
|---|---|
| Managing Directors | $495 - $550/hour |
| Directors | $350 - $425/hour |
| Consultants and Staff | $250 - $345/hour |

# Executive Sounding Board
# Associates LLC

Management and Financial Consultants

---

6.2   ESBA may adjust its rates on not less than 30 days advance notice to the Company.

6.3   ESBA will be reimbursed for any out-of-pocket expenses reasonably incurred in connection with the services rendered hereunder. Such expenses include, but are not limited to, travel, meals, lodging, parking, telephone and fax, general office services, photocopying and delivery services. Travel time is charged at fifty percent (50%) of the consultant's standard hourly rate. The reasonable fees and expenses of attorneys consulted or engaged by ESBA to assist it in connection with this Agreement shall be a reimbursable expense incurred by ESBA.

6.4   The Company agrees to pay ESBA a retainer of $20,000.00 due and payable at signing of this Engagement Agreement. The retainer will be returned at the conclusion of the engagement, less any outstanding invoices due at that time, without interest.

7.   *Testimony.* Except for testimony which is within the scope of the services set forth on Exhibit A for which ESBA shall be compensated as provided in Section 6 of this Agreement, if ESBA is required to deliver testimony in connection with the services provided under this Agreement, the Company agrees to pay ESBA a fee at ESBA's then prevailing hourly rates for witness preparation, court appearances, and reimbursable expenses including reasonable attorney's fees and expenses incurred by ESBA in connection with the testimony; provided, however, that if and to the extent that ESBA is providing consulting services to the Company pursuant to the terms of this Agreement at the time of such preparation or court appearance, then such fees and expenses shall be paid as set forth in Section 6 of this Agreement.

8.   *Non Solicitation of ESBA Employees.* Each party agrees that neither it nor its affiliates commencing on the date hereof and continuing for two years after termination of this Agreement the Company shall not hire, retain or utilize (other than through ESBA) the services of any ESBA employee or former employee who has been employed by ESBA in the ninety (90) day period proceeding the date of this Agreement. The Company agrees that any violation of this paragraph shall result in liquidated damages in the amount of 100% of the hired employee's total compensation during her or his first year of employment by the Company. Payment of liquidated damages for violation of this Agreement may be billed and shall be payable as an additional reimbursable expense under this Agreement and shall not be subject to any requirement of advance authorization by the Company or any other limitation that may apply to other fees and expenses payable to ESBA under this Agreement.

9.   *Use of Name and Work Product.* The Company acknowledges that all information (written or oral) generated by ESBA in connection with its engagement is intended solely for benefit and use of the Company (limited to its management, including the Board) and agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with attribution to ESBA at any time, in any manner or for any purpose other than within the Company, in each case without ESBA's prior written consent (which shall not be unreasonably withheld), except as required by law or valid legal process (and after advance notice to ESBA). Without limiting the foregoing, the Company shall not, and shall not authorize anyone else to, use ESBA's name or use or make available to third parties any written materials (including extracts or excerpts there from or abstracts thereof) or other work product prepared by ESBA pursuant to this Agreement in connection with obtaining or extending credit, offering or selling securities or other assets or in any representations to third parties without ESBA's prior written consent. ESBA is authorized, at its expense, to place a customary "tombstone"

# Executive Sounding Board Associates LLC

Management and Financial Consultants

advertisement or similar announcement with respect to its engagement hereunder in such form and in such media, as ESBA deems appropriate.

10. *Standard of Care and Warranty Disclaimer.* ESBA performs its services in accordance with standards of skill and care generally observed by "turnaround" consultants of recognized national standing in the United States. If ESBA fails to meet such standards the sole remedy of Company shall be to terminate this Agreement and recover any direct damages Company may prove as a result of ESBA's failure to comply with such standards. Neither ESBA nor any of its directors, shareholders, officers, employees, consultants or other agents (collectively with ESBA the "ESBA Parties") shall be liable for any loss or loss of profits, any indirect, incidental or consequential damages, or any claim, loss or expense for which indemnification would be provided under Section 10 of this Agreement. In performing its services under this Agreement, ESBA is not assuming any responsibility for the Company's decision to pursue or not to pursue any business strategy or to effect or not to effect any restructuring, business combination, refinancing or other transaction, nor shall ESBA be responsible for providing any tax, legal or other specialized advice. ESBA makes no representations or warranties, express or implied, concerning the value of its services or the results that may be obtained there from. ESBA's engagement shall not constitute an audit, review, compilation or any other type of financial statement reporting or consulting engagement that is subject to the rules of the AICPA or other state and national professional bodies.

11. *Limitation of Liability, Indemnity and Insurance.*

11.1 ESBA's sole obligation under this Agreement is to the Company, and any advice (written or oral) given by ESBA to the Company in connection with ESBA's engagement under this Agreement is solely for the use and benefit of the Company. In no event, regardless of the legal theory advanced, shall any ESBA Party be (i) responsible other than for gross negligence, willful misconduct, bad faith or knowing violation of law or (ii) liable to any third party. The obligations of ESBA are solely corporate obligations, and no officer, director, employee, agent, shareholder or controlling person of ESBA shall be subject to any personal liability whatsoever to any person, nor will any such claim be asserted by the Company, whether on its own behalf or on behalf of any other person.

11.2 ESBA and the ESBA Parties shall be entitled to indemnification from the Company for, and the Company shall indemnify, defend and hold the ESBA Parties harmless from, claims, costs, demands, damages, assessments, actions, suits or other proceedings, liabilities, judgments, penalties, fines or amounts paid in settlement, expenses, and attorneys fees (whether incurred at the trial or appellate level, in an arbitration, in bankruptcy (including, without limitation, any adversary proceeding, contested matter or application), or otherwise and notwithstanding any limitation), or otherwise and notwithstanding any limitation set forth in Section 11.1 above (collectively "Claims") arising out of, connected with or related to the services performed under this Agreement, whether or not such Claims are attributable in whole or in part to negligence by ESBA, other than Claims that are finally determined by judgment or in binding arbitration to have resulted from (a) acts or omissions by ESBA that involve gross negligence, intentional misconduct or a knowing violation of law or (b) conduct that ESBA did not in good faith believe was in, or at least not opposed to, the best interests of the Company, to the fullest extent permitted by the Company's certificate of formation, operating or limited liability company agreement and applicable state law. ESBA shall give prompt written notice to the Company of any Claim for which indemnification may be claimed hereunder, and the parties

# Executive Sounding Board Associates LLC

Management and Financial Consultants

shall then cooperate as reasonably required to defend such Claim; provided, that the right of the ESBA Parties to indemnification shall not be affected by any failure or delay by ESBA to give such notice, except to the extent that the rights and remedies of the indemnifying party shall have been materially prejudiced as a result of such failure or delay. Promptly upon receipt of request for payment, the Company shall pay all costs and expenses, including reasonable attorneys' fees, incurred by ESBA to enforce its rights under this Agreement. The Company agrees that, without ESBA's prior written consent (which will not be unreasonably withheld), the Company will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, or proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not ESBA or any other ESBA Party are an actual or potential party to such claim, action or proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each ESBA Party from all liability arising out of such claim, action or proceeding or investigation.

11.3    If for any reason the foregoing indemnification is determined to be unavailable to any ESBA Party or insufficient to fully indemnify any such person, then the Company will contribute to the amount paid or payable by such person as a result of any such claims in such proportion as is appropriate to reflect both the relative benefit and the relative fault of the Company on the one hand, and the ESBA Parties on the other hand, and any other relevant equitable considerations in connection with the matters as to which such claims relate; provided, however, that in no event shall the amount to be contributed by all ESBA Parties in the aggregate exceed the amount of compensation actually received by ESBA under this Agreement.

11.4    In addition to the indemnifications provided by Section 11.2 or 11.3, any ESBA employee serving as an officer or director of the Company or any of its subsidiaries or affiliates shall be entitled to the benefit of the most favorable indemnities provided by the Company to its officers and directors, whether under the Company's governing documents, by contract or otherwise.

11.5    Immediately upon execution of this Agreement, and as a condition to the obligations of ESBA hereunder, the Company shall use its best efforts to cause ESBA and its agents and employees to be added as additional named insureds on the Company's comprehensive general liability insurance policies and any employee of ESBA serving as an officer or director of the Company or any of its subsidiaries or affiliates to be specifically included and covered under the Company's directors' and officers' liability insurance policies ("D&O Policies"). In the event the Company is unable to include ESBA employees under the Company's D&O Policies or does not have first dollar coverage as outlined in Section 11.4 in effect for at least $3 million (e.g., such policy is not reserved based on actions that have been or are expected to be filed against officers and directors alleging prior acts that may give rise to a claim), ESBA may purchase a separate D&O policy that will cover its employees and agents only and the cost of the policy shall be invoiced to and paid by the Company as a reimbursable expense under Section 6.5. ESBA may terminate its engagement under this Agreement if the D&O Policies or the reserved coverage there under are not satisfactory to ESBA or if a separate D&O policy is unavailable on terms and conditions satisfactory to ESBA. At the conclusion of the engagement, to the extent funds are available, the Company shall purchase tail coverage on the directors' and officers' policy to extend coverage for an additional 24 months.

**Executive Sounding Board
Associates LLC**                                    Management and Financial Consultants

---

12.  *Confidentiality.*

12.1  All information disclosed to ESBA by the Company in connection with ESBA's engagement under this Agreement, including without limitation information acquired from the Company's employees or inspection of the Company's property, and confidential information disclosed to ESBA by third parties representing or acting for or on behalf of Company, shall be considered Confidential Information. Confidential Information shall not include information which (a) is now or subsequently becomes generally known or available by publication, commercial or otherwise, through no fault of the ESBA, (b) is known by ESBA at the time of this disclosure, (c) is independently developed by ESBA without the use of any Confidential Information, (d) is information that the parties agree in writing may be disclosed by ESBA, (e) is or becomes available to ESBA on a non-confidential basis from a source other than Company, provided that, to ESBA' knowledge, such source was not prohibited from disclosing such information to ESBA by a legal, contractual or fiduciary obligation owed to Company or (f) is information that must be disclosed pursuant to applicable law or legal, regulatory, or administrative process after compliance with the provisions hereof.

12.2  ESBA shall keep all Confidential Information confidential and shall use the Confidential Information solely for purpose of providing the services to be furnished pursuant to this Agreement. ESBA may make reasonable disclosures of Confidential Information to third parties in connection with the performance of its engagement under this Agreement and in connection with any dispute between ESBA and the Company under or concerning this Agreement, and ESBA will have the right to disclose to others in the normal course of business its involvement with the Company and in the Case. Any written information produced by ESBA shall be treated as Confidential Information, shall be delivered solely to the Company and, except as required by law or legal process, shall not be provided to any third party without the Company's consent.

12.3  If ESBA receives any request (by order, subpoena or other legal process) to produce any Confidential Information, ESBA will, unless prohibited by law or process, use its best efforts to provide the Company with timely notice of such request and, at the Company's request and expense, cooperate with the Company in any action the Company deems necessary or appropriate under the circumstances to protect the confidentiality of the Confidential Information.

13.  *Termination.*  ESBA's engagement may be terminated at any time by the Company, and ESBA may terminate its engagement at any time, in each case by written notice and without liability or continuing obligation to the Company or ESBA, except that following such termination ESBA shall remain entitled to any compensation accrued pursuant to Section 6 but not yet paid prior to termination and to reimbursement of expenses incurred prior to termination. Upon termination ESBA may apply any retainer or other amounts held by ESBA to any amounts due under this Agreement. All provisions of this Agreement, other than Sections 1 and 4, shall survive termination of ESBA's engagement under this Agreement.

14.  *Modification.*  No modification, amendment, addition, or waiver of any provisions of this Agreement shall be valid or enforceable unless in writing, signed by all parties and approved by the Court.

15.  *Legal Construction.*  The validity, interpretation and enforceability of this Agreement shall be determined in accordance with the substantive laws of the State of

# Executive Sounding Board Associates LLC

Management and Financial Consultants

---

Pennsylvania, exclusive of choice of law provisions. If any provisions of this Agreement shall for any reason be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein and to give effect as nearly as possible to the intent of the parties. This Agreement is the product of negotiations between the parties in which each has had the opportunity to be advised by counsel of its choosing, and therefore the rule of construction that an agreement is construed against the drafter thereof shall not be applicable to this Agreement.

16. *No Third Party Benefit.* This Agreement is made solely for the benefit of the parties hereto, and no third party shall acquire any rights under or claim against ESBA as a result of this Agreement.

17. *Dispute Resolution.* Any claim or dispute concerning, relating to or arising out of this Agreement shall be resolved by the Court or, if the Court declines to hear the dispute, by binding arbitration in accordance with the rules of the American Arbitration Association or such other rules as may be agreed to by the parties. The arbitration shall be conducted in a location mutually agreed by the parties. If the parties fail to agree on the location within 30 days after either party requests arbitration, the arbitration shall be conducted in Philadelphia, Pennsylvania. The prevailing party in any arbitration under this Agreement shall be entitled to recover from the other as part of the arbitration award reasonable costs and fees, including reasonable attorney's fees, notwithstanding any limitation set forth in Section 6 above. Any arbitration award may be enforced by a court of competent jurisdiction in accordance with applicable law. In the event legal action to enforce the arbitration award is necessary the prevailing party shall be entitled to recover its costs and expenses, including reasonable attorneys fees, in such action and in any appeals there from or reviews thereof (whether incurred at the trial or appellate level, in an arbitration, in bankruptcy court (including, without limitation, any adversary proceeding, contested matter or application), or otherwise.

18. *Disclosures.* While ESBA is not currently aware of any disqualifying relationships or connections with any party in interest in the Case, because ESBA is a consulting firm that serves clients on a national basis in numerous cases and projects, both in and out of court, it is possible that ESBA may have rendered or may in the future render services to or have business associations with other entities which had or have relationships with the Company, including creditors of the Company. ESBA will make appropriate disclosure of any such connections and will not represent the interests of any of these aforementioned entities in any matters relating to Company.

19. *Notices.* All notices under or concerning this Agreement shall be in writing, may be given by personal delivery, overnight mail or United States mail, shall be effective only upon actual receipt, and shall be delivered to the party receiving notice at the address set forth in this Agreement.

20. *General Provisions.* This Agreement shall be binding on the parties and their respective successors and assigns, but neither party may assign any right or benefit or delegate any duty under this Agreement, voluntarily or by operation of law, without the written consent of the other party. This Agreement constitutes the parties' entire agreement with respect to its subject matter. ESBA will not be responsible for performing any services not specifically

# Executive Sounding Board
# Associates LLC

Management and Financial Consultants

---

described in this Agreement or in a subsequent writing signed by the parties. This Agreement may be executed by facsimile and in any number of counterparts, each of which shall constitute an original and all of which shall constitute one agreement.

21. *Effective Date.* This Agreement shall be effective June 25, 2014.

22. *Maintaining Time Sheets.* It will not be necessary for ESBA to file fee applications with the Court. However, ESBA will maintain detailed time sheets setting forth the time spent by ESBA professionals, the date the time was incurred and the tasks performed during such time.

The signing of this engagement letter and receipt of the retainer is necessary for this engagement to commence. If the foregoing is in accordance with your understanding, please sign this engagement letter and forward it, along with the $20,000 retainer check to our office. We look forward to working with you on this engagement.

Sincerely,


/s/ Michael DuFrayne
Michael DuFrayne
Managing Director
Executive Sounding Board Associates Inc.
Two Penn Center Plaza, Suite 1730
Philadelphia, PA 19102

AGREED TO AND ACCEPTED __July 2__, 2014

By: _____

Title: __DIRECTOR__

Address: __850 Third Ave__
__New York, NY 10022__

---

Schedules:
Exhibit A: Description of Services

# Executive Sounding Board Associates LLC

Management and Financial Consultants

---

Exhibit A

## Scope of Services

- Assume overall management and control of day-to-day operations, including cash management, of the Company.

- Gain an understanding of the legal and operational structure of the Company, it affiliates and related entities, if any.

- Manage the Chapter 11 bankruptcy process and fulfill all of the reporting requirements associated with operating in Chapter 11.

- Provide leadership and direction of the reorganization process including, without limitation, negotiations with relevant parties-in-interest in the development and implementation of an appropriate restructuring plan for the Company.

- Negotiate litigation matters as Chief Restructuring Officer on behalf of the Company.

- Negotiate on behalf of the Company with various parties, including but not limited to secured lenders, creditors, equity holders, governmental units, and any other parties-in-interest.

- Plan and provide overall management of any required wind down efforts, including liquidation of residual assets.

- Other services as deemed appropriate