# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ACG CREDIT COMPANY II, LLC,[1]<br><br>Debtor. | ) Chapter 11<br>)<br>) Case No. 14-11500 (KJC)<br>)<br>)<br>)<br>) |

**DECLARATION OF MICHAEL DUFRAYNE IN SUPPORT OF DEBTOR'S APPLICATION TO EMPLOY EXECUTIVE SOUNDING BOARD ASSOCIATES LLC AS CHIEF RESTRUCTURING OFFICER FOR DEBTOR PURSUANT TO 11 U.S.C. SECTIONS 105(a) AND 363(b)**

**MICHAEL DuFRAYNE**, certify as follows:

1.      I am a managing director of Executive Sounding Board Associates LLC ("ESBA"), with offices at 2 Penn Center Plaza, Suite 1730, Philadelphia, Pennsylvania 19102. This affidavit is submitted in connection with the prefixed application (the "Application") of ACG Credit Company II, LLC (the "Debtor"), to retain ESBA for interim management services, and in particular as the Chief Restructuring Officer ("CRO") of the Debtor in connection with the prosecution of its chapter 11 case. Unless otherwise stated, I am fully familiar with all matters set forth in this Affidavit.

2.      The Debtor has requested that ESBA render services in connection with its chapter 11 case. The Debtor has selected ESBA as its CRO because of the firm's experience in restructuring companies both in and out of bankruptcy, and its ability to perform the services needed effectively, expeditiously and efficiently for the benefit of the Debtor and its estates. The Debtor believes that ESBA is well-qualified to act as its CRO.

---

[1] The last four digits of the Debtor's federal tax identification number are 7139.

132546.01400/21808897v.1

3. As set forth in the Application, ESBA will provide services for the following non-exhaustive matters:

- Assume overall management and control of day-to-day operations, including cash management, of the Company.

- Gain an understanding of the legal and operational structure of the Company, it affiliates and related entities, if any.

- Manage the Chapter 11 bankruptcy process and fulfill all of the reporting requirements associated with operating in Chapter 11.

- Provide leadership and direction of the reorganization process including, without limitation, negotiations with relevant parties-in-interest in the development and implementation of an appropriate restructuring plan for the Company.

- Negotiate litigation matters as Chief Restructuring Officer on behalf of the Company.

- Negotiate on behalf of the Company with various parties, including but not limited to secured lenders, creditors, equity holders, governmental units, and any other parties-in-interest.

- Plan and provide overall management of any required wind down efforts, including liquidation of residual assets.

- Other services as deemed appropriate

4. Neither I, ESBA, nor any associate thereof, insofar as I have been able to ascertain, has any connection with the Debtor, their creditors or any other party in interest herein, or their respective attorneys and accountants, the United States Trustee, or any person employed by the Office of the United States Trustee, except as disclosed herein.

5. ESBA has conducted an initial search of the Debtor's creditors, the Debtor's secured lender, and numerous other parties in interest in this chapter 11 case to determine whether ESBA represents any entity in this case which has an adverse interest to the Debtor. To the best of my knowledge, ESBA does not currently represent creditors of the Debtor in matters relating to the Debtor. ESBA believes that it does not hold or represent an interest

adverse to the estate, and that ESBA is a disinterested person, as such term is defined in § 101(14) of the Bankruptcy Code.

6. ESBA holds a $20,000.00 a retainer (the "Retainer") for prospective services to be rendered in the Debtor's chapter 11 case.

7. ESBA will be paid its standard hourly rates for the services its personnel provide to the Company.

    i. ESBA agrees that it fees will not exceed $60,000 on a monthly basis.

    ii. Mr. DuFrayne's standard billing rate is $550 per hour; however, for this engagement his rate will be discounted to $495 per hour.

    iii. Robert Agarwal, a ESBA Director, will assist on the engagement. Mr. Agarwal's standard billing rate is $425 per hour; however, for this engagement his rate will be $400 per hour.

    iv. Other ESBA personnel, some of whom may be independent contractors, if any, used during the course of this engagement will be charged at their standard billing rate.

    v. ESBA's customary hourly rates, subject to change from time to time, are as follows:

| | |
|---|---|
| Managing Directors | $495 - $550/hour |
| Directors | $350 - $425/hour |
| Consultants and Staff | $250 - $345/hour |

    vi. Should it be deemed necessary in the course of the engagement for ESBA to provide temporary staff as covered in Section 1 ESBA shall be entitled to payment from the Company based on the standard hourly rate of the individual consultant or staff member.

8. It will not be necessary for ESBA to file fee applications with the Court. However, ESBA will maintain detailed time sheets setting forth the time spent by ESBA professionals, the date the time was incurred and the tasks performed during such time.

9. ESBA and the ESBA Parties shall be entitled to indemnification from the Company for, and the Company shall indemnify, defend and hold the ESBA Parties harmless from, claims, costs, demands, damages, assessments, actions, suits or other proceedings, liabilities, judgments, penalties, fines or amounts paid in settlement, expenses, and attorneys fees (whether incurred at the trial or appellate level, in an arbitration, in bankruptcy (including, without limitation, any adversary proceeding, contested matter or application), or otherwise and notwithstanding any limitation), or otherwise and notwithstanding any limitation set forth in Section 11.1 above (collectively "Claims") arising out of, connected with or related to the services performed under this Agreement, whether or not such Claims are attributable in whole or in part to negligence by ESBA, other than Claims that are finally determined by judgment or in binding arbitration to have resulted from (a) acts or omissions by ESBA that involve gross negligence, intentional misconduct or a knowing violation of law or (b) conduct that ESBA did not in good faith believe was in, or at least not opposed to, the best interests of the Company, to the fullest extent permitted by the Company's certificate of formation, operating or limited liability company agreement and applicable state law. ESBA shall give prompt written notice to the Company of any Claim for which indemnification may be claimed hereunder, and the parties shall then cooperate as reasonably required to defend such Claim; provided, that the right of the ESBA Parties to indemnification shall not be affected by any failure or delay by ESBA to give such notice, except to the extent that the rights and remedies of the indemnifying party shall have been materially prejudiced as a result of such failure or delay. Promptly upon receipt of request

for payment, the Company shall pay all costs and expenses, including reasonable attorneys' fees, incurred by ESBA to enforce its rights under this Agreement. The Company agrees that, without ESBA's prior written consent (which will not be unreasonably withheld), the Company will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, or proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not ESBA or any other ESBA Party are an actual or potential party to such claim, action or proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each ESBA Party from all liability arising out of such claim, action or proceeding or investigation.

10. If for any reason the foregoing indemnification is determined to be unavailable to any ESBA Party or insufficient to fully indemnify any such person, then the Company will contribute to the amount paid or payable by such person as a result of any such claims in such proportion as is appropriate to reflect both the relative benefit and the relative fault of the Company on the one hand, and the ESBA Parties on the other hand, and any other relevant equitable considerations in connection with the matters as to which such claims relate; provided, however, that in no event shall the amount to be contributed by all ESBA Parties in the aggregate exceed the amount of compensation actually received by ESBA under this Agreement.

11. In addition to the indemnifications provided by Section 11.2 or 11.3, any ESBA employee serving as an officer or director of the Company or any of its subsidiaries or affiliates shall be entitled to the benefit of the most favorable indemnities provided by the Company to its officers and directors, whether under the Company's governing documents, by contract or otherwise.

12. The Company shall use its best efforts to cause ESBA and its agents and employees to be added as additional named insureds on the Company's comprehensive general liability insurance policies and any employee of ESBA serving as an officer or director of the Company or any of its subsidiaries or affiliates to be specifically included and covered under the Company's directors' and officers' liability insurance policies ("D&O Policies").

13. In the event the Company is unable to include ESBA employees under the Company's D&O Policies or does not have first dollar coverage as outlined in Section 11.4 in effect for at least $3 million (e.g., such policy is not reserved based on actions that have been or are expected to be filed against officers and directors alleging prior acts that may give rise to a claim), ESBA may purchase a separate D&O policy that will cover its employees and agents only and the cost of the policy shall be invoiced to and paid by the Company as a reimbursable expense under Section 6.5. ESBA may terminate its engagement under this Agreement if the D&O Policies or the reserved coverage there under are not satisfactory to ESBA or if a separate D&O policy is unavailable on terms and conditions satisfactory to ESBA. At the conclusion of the engagement, to the extent funds are available, the Company shall purchase tail coverage on the directors' and officers' policy to extend coverage for an additional 24 months.

14. ESBA requests that its retention be deemed effective as June 25, 2014 or the date the Debtor fulfilled the requirements for the engagement to commence, in light of the continuing nature of the services which must be performed in order for ESBA to properly represent the Debtor and in order to avoid any prejudice resulting from any administrative delay in the signing of a retention order.

15. Based upon information available to me, ESBA holds or represents no interest adverse to the Debtor and its estate as to the matters in which ESBA is to be engaged.

-7-

As ESBA has or represents no interest adverse to the Debtor or the Debtor's estate, I believe that ESBA is a "disinterested person" as defined in § 101(14), and as referenced in § 327(a), as modified by § 1107(b) of the Bankruptcy Code.

*Michael DuFrayne*
Michael DuFrayne