**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| ACG CREDIT COMPANY II, LLC, | Case No. 14-11500 (KJC) |
| | Objection Date:  July 24, 2014 at 4:00 pm |
| | Hearing Date:  July 29, 2014 at 11:00 am |
| Debtor. | **Re: Docket No. 54** |

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE**
**APPLICATION OF THE DEBTOR FOR AN ORDER AUTHORIZING AND**
**APPROVING THE EMPLOYMENT OF EXECUTIVE SOUNDING BOARD**
**ASSOCIATES LLC AS CHIEF RESTRUCTURING OFFICER FOR THE**
**DEBTOR *NUNC PRO TUNC* TO JUNE 25, 2014**

Roberta A. DeAngelis, United States Trustee for Region Three ("United States Trustee"), through her counsel, files this objection ("Objection") to the Application of the Debtor for an Order Authorizing and Approving the Employment of Executive Sounding Board Associates LLC as Chief Restructuring Officer for the Debtor *Nunc Pro Tunc* to June 25, 2014 (Docket No. 54) (the "Application").  In support of this Objection, the United States Trustee respectfully states:

**Preliminary Statement**

1.     ACG Credit Company II, LLC (the "Debtor") has failed to provide any evidence demonstrating that there is a need for it to employ a chief restructuring officer, especially in light of the facts that the Debtor does not have any current operations or employees, has a very limited pool of assets and spectrum of creditors, and this case appears to be a two-party dispute that does not require the administrative oversight of the Court or the costs related to the retention of a CRO.

## Jurisdiction

2.      This Court has jurisdiction to hear this Motion.

3.      Pursuant to 28 U.S.C. § 586, the United States Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district and specifically authorized to seek conversion or dismissal of a case under Section 1112.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys. Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that United States Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.),* 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

4.      Pursuant to 11 U.S.C. § 307, the United States Trustee has standing to be heard on this Motion.

## Background

5.      On June 17, 2014, the Debtor filed its voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").   No official committee has been appointed in this case.

6.      The Debtor's business involved the loaning of money to individuals or organizations secured by museum quality art.  *Objection of Debtor ACG Credit Company II, LLC to SageCrest II, LLCs Motion for Relief from the Automatic Stay to Proceed with Trial Before the U.S. District Court in Connecticut*, Docket No. 44, at ¶ 2.   The Debtor retained collateral in the form of the art.  *Id.*   At the time of the bankruptcy filing, the Debtor did not have any open bank accounts.  *Stipulated and Uncontested Facts*,   Docket No. 48, at ¶ 44.   Prior to the Petition Date,

the Debtor also was not in the business of making new loans and did not conduct business other than seeking to collect on three loans, a judgment, and certain collateral.  *Id.* at ¶ 45.

7.      On Jun 25, 2014, the Debtor filed its *List of Creditors Holding 20 Largest Unsecured Claims*.  Docket No. 28.  The Debtor includes seven creditors on the list.  *Id.*  Two of whom are affiliates of the Debtor; three of whom are professionals that have represented the Debtor in its litigation with SageCrest (defined below); one of whom is an accountancy firm that the Debtor designated as a witness in the litigation with SageCrest; and the last of the seven creditors is SageCrest.  *Id; see also Stipulated and Uncontested Facts*, Docket No. 48, at ¶46.

8.      Prior to the bankruptcy filing, the Debtor was engaged in extensive litigation with SageCrest Liquidating Trust ("SageCrest").  The claims asserted by SageCrest against the Debtor date back to a settlement stipulation and mutual release of May 19, 2008.  *Stipulated and Uncontested Facts*, Docket No. 48, at ¶ 2.  SageCrest is involved in its own bankruptcy in the United States Bankruptcy Court for the District of Connecticut ("Connecticut Bankruptcy Court"), which commenced on August 17, 2008.  *Id.* at ¶ 6.  SageCrest filed several actions against the Debtor and other related parties controlled by Mr. Peck (collectively, the "Defendants") for breaches of the settlement stipulation, those actions were consolidated for discovery and trial by the Connecticut Bankruptcy Court.  *Id.* at ¶¶ 9-12.1

9.      Discovery on those actions and motion practice occurred from June 2010 through August 2013.  *Id.* at ¶ 13.  Approximately one month before the December 31, 2012 close of fact discovery deadline, the Defendants switched counsel.  *Id.* at ¶ 22.  One month before a scheduled May 2013 trial before the Connecticut Bankruptcy Court, the Defendants,

including the Debtor sought to withdraw the reference to the Connecticut Bankruptcy Court. *Id.* at ¶ 24. SageCrest stipulated to the withdrawal of the reference, and the actions were consolidated before the United States District Court for the District of Connecticut (the "Connecticut District Court"). *See id.* at ¶ 25. Trial was eventually scheduled to commence on June 18, 2014. *Id.* at ¶¶ 29-30. However on June 17, 2014 the Debtor filed for bankruptcy.

10. After a hearing on SageCrest's *Motion for Relief From the Automatic Stay to Proceed with Trial Before the U.S. District Court in Connecticut* (Docket No. 11) (the "Stay Motion") and the Debtor's objection (Docket No.44), the Court entered an *Interim Order Granting Motion for Relief From the Automatic Stay to Proceed with Trial Before the U.S. District Court in Connecticut* (Docket No. 79). The interim order granted SageCrest relief from the automatic stay for the limited purpose of obtaining a trial commencement date in the Connecticut action. *Id.*

11. On July 2, 2014 the Debtor filed its Schedules and Statement of Financial Affairs ("Schedules and Statements"). *See* Docket Nos. 35 and 36. Attached to the Schedules and Statements is a document titled "Reservation of Rights with Regard to Schedules of Assets and Liabilities and Statement of Financial Affairs," which asserts that reasonable efforts had been made by the Debtor to prepare and file complete and accurate Schedules and Statements. *Id.* However, both filings consist mainly of references to either a yet to be supplied supplement or three page attachment to the Statements. *Id.* In a majority of the entries the value of assets and liabilities are simply "unknown." The Schedules and Statements were completed by Ian Peck ("Mr. Peck"), the Debtor's sole member. To date, the Schedules and Statements have not been amended.

12.     On the same date, the Debtor filed its initial Monthly Operating Report. Docket No. 39.   However, much like the Schedules and Statements, it contains no useful information, only a statement that documents are forthcoming.   *Id.*   The Monthly Operating Report was also signed by Mr. Peck.

13.     On July 14, 2014, the Debtor filed the Application to employ and retain Executive Sounding Board Associates LLC ("ESBA") and appoint Michael F. DuFrayne ("Mr. DuFrayne") as chief restructuring officer ("CRO") pursuant to section 363 of the Bankruptcy Code, *nunc pro tunc* June 25, 2014.   *See* Docket No. 54.   The Debtor contends that its retention of ESBA is in the best interest of the Debtor's estate to efficiently and effectively work through its bankruptcy case.   Specifically, the CRO is necessary to serve as a uncontentious alternative to Mr. Peck in the Debtor's efforts to reach a resolution with SageCrest and other creditors.

14.     ESBA will provide the following services as CRO:

(a)     Assume overall management and control of day-to-day operations, including cash management, of the Debtor;

(b)     Gain an understanding of the legal and operational structure of the Debtor, it affiliates and related entities, if any;

(c)     Manage the Chapter 11 bankruptcy process and fulfill all of the reporting requirements associated with operating in Chapter 11;

(d)     Provide leadership and direction of the reorganization process including, without limitation, negotiations with relevant parties-in-interest in the development and implementation of an appropriate restructuring plan for the Debtor;

(e)     Negotiate litigation matters as Chief Restructuring Officer on behalf of the Debtor;

(f)     Negotiate on behalf of the Debtor with various parties, including but not limited to secured lenders, creditors, equity holders, governmental units, and any other parties-in-interest;

(g)     Plan and provide overall management of any required wind down efforts, including liquidation of residual assets; and

(h)    Other services as deemed appropriate.

15.    For the aforementioned services, the Debtor proposes to pay ESBA an hourly rate of $250 – $550 depending on the ESBA professional providing the services. However, ESBA's fees will not exceed $60,000 on a monthly basis.    Docket No. 54, at Exhibit B.

## Objection

16.    The Debtor seeks to employ and retain ESBA and appoint Mr. DuFrayne as CRO pursuant to section 363 of the Bankruptcy Code, *nunc pro tunc* to the Petition Date.    Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."    11 U.S.C. § 363(b)(1).

17.    Under applicable case law in this and other jurisdictions, a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code must represent a reasonable business judgment on the part of the debtor.    *See, e.g., In re Del. & Hudson Ry. Co.,* 124 B.R. 169, *175-76* (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.").

18.    In this case, the Debtor has not articulated a reasonable justification to support the retention of ESBA.    While retention of a CRO or a crisis manager might be appropriate in some bankruptcy cases, it is not appropriate in this case at this time. Unlike other cases, there is no intrinsic value in retaining a CRO in a case where the Debtor does not have any

current operations or employees, has very limited assets and spectrum of creditors and this case appears to be a two-party dispute that does not require the administrative oversight of the Court or the costs related to the retention of a CRO.  The Debtor has not met its burden that retaining ESBA and appointing Mr. DuFrayne as CRO is reasonable use of its business judgment based on the facts of this case.

19.     In addition, the Debtor has not filed a motion regarding post-petition financing.  It is unclear to the United States Trustee what resources that Debtor has to access to and will utilize the fund the administrative expenses of this case, including the fees incurred in connection with the Debtor's proposed ESBA retention.

## Conclusion

20.     The United States Trustee leaves the Debtor to its burden and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

[Remainder of page intentionally left blank.]

WHEREFORE, the United States Trustee respectfully requests that the Court deny

the Application, and grant such other relief as this Court deems appropriate, fair and just.

Dated: July 24, 2014　　　　　　　　　　　Respectfully submitted,
　　　　　Wilmington, DE

　　　　　　　　　　　　　　　　　　　**ROBERTA A. DeANGELIS**
　　　　　　　　　　　　　　　　　　　**UNITED STATES TRUSTEE**

By:　_/s/　Tiiara N. A. Patton_____
　　　　Tiiara N. A. Patton
　　　　Trial Attorney
　　　　United States Department of Justice
　　　　Office of the United States Trustee
　　　　J. Caleb Boggs Federal Building
　　　　844 King Street, Suite 2207, Lockbox 35
　　　　Wilmington, DE 19801
　　　　(302) 573-6491 (Phone)
　　　　(302) 573-6497 (Fax)